KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Christopher J. Reilly

*Co-counsel to Carbon Investment Partners, LLC
and Carbon Master Fund, L.P.*

Hearing Date: March 23, 2020
3:00 p.m.
Objection Deadline: March 9, 2020

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEE ALEXANDER BRESSLER,<br><br>        Debtor.<br>_____<br><br>CARBON INVESTMENT PARTNERS, LLC<br>and CARBON MASTER FUND, L.P.,<br><br>        Plaintiffs,<br><br>vs.<br><br>LEE ALEXANDER BRESSLER,<br><br>        Defendant. | Chapter 11<br><br>Case No. 18-13098 (MG)<br><br><br><br><br>Adv. Proc. No. 19-01317 (MG) |

**PLAINTIFFS' MOTION, PURSUANT TO FED. R. BANKR. P. 7056, FOR AN ORDER
DIRECTING SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST
DEFENDANT LEE ALEXANDER BRESSLER ON THE FIRST, SECOND, THIRD &
FOURTH CAUSES OF ACTION IN THE COMPLAINT SEEKING THE
DENIAL OF THE DEBTOR'S DISCHARGE PURSUANT TO
<u>11 U.S.C. §§ 727(a)(3), 727(a)(4)(A), 727(a)(2)(B), 727(a)(4)(D) AND 727(d)</u>**

**TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:**

Carbon Investment Partners, LLC and Carbon Master Fund, L.P. ("Carbon" or the "Plaintiffs") by their counsel Klestadt Winters Jureller Southard & Stevens, LLP, as and for their motion (the "Motion") for an order directing the entry of summary judgment with respect to the First, Second, Third and Fourth Causes of Action set forth in Carbon's complaint, dated July 9, 2019 (the "Complaint") [Docket No. 1], against Lee Alexander Bressler (the "Debtor"), denying the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A), 727(a)(2)(B), 727(a)(4)(d), 727(a)(3) and 727(d), hereby state as follows:

## INTRODUCTION

The bankruptcy discharge exists to give honest debtors a fresh start. Obtaining a bankruptcy discharge requires compliance with the rules of maintaining and disclosing a debtor's financial information. The Debtor in this case, however, intentionally flouted those rules. As found in the binding Oklahoma court judgment, Debtor intentionally destroyed the entire contents of his laptop—including files reflecting and relating to his financial holdings—with professional forensic data destruction software. Having deleted that data, Debtor then decided to conceal a number of assets that were required to be disclosed on his bankruptcy schedules. These facts are not in dispute.

Any one of the Debtor's multiple transgressions disqualifies Debtor from discharge. Carbon respectfully requests that the Court grant summary judgment on the First, Second, Third and Fourth Counts of the Complaint, any one of which is sufficient to deny the Debtor's discharge, avoiding the need for an expensive and time consuming trial that would lead to the same result.

## STATEMENT OF FACTS

For a full recitation of the facts supporting the Motion, the Plaintiffs respectfully refer the Court to their Statement of Material Facts Pursuant to Local Bankruptcy Rule 7056-1 in Support

of its Motion (the "Statement of Facts")[1], filed concurrently with this Motion, as well as the Declaration of Tracy L. Klestadt (the "Klestadt Declaration") in support of the Motion.

**SUMMARY JUDGMENT STANDARD OF REVIEW**

1.	The Court must grant summary judgment when, viewing the evidence in a light most favorable to the nonmoving party, there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  When the burden of proof at trial will fall on the nonmoving party, it is "sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009) (citing Celotex, 477 U.S. at 322–23).  The nonmoving party must then come forward with "admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  Id. (citing Celotex, 477 U.S. at 322–23).  In so doing, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); FDIC v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010).

2.	In other words, summary judgment is appropriate where the "undisputed facts reveal that the plaintiff cannot establish an essential element of the claim, on which element the plaintiff has the burden of proof, and the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on that element." In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 509 (2d Cir. 2010) (quoting Burke v. Jacoby, 981 F.2d 1372,

---

[1] Capitalized terms used but not herein defined shall have the meanings ascribed to them in the Statement of Facts.

1379 (2d Cir. 1992)). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322–23. "Where no rational finder of fact could find in favor of the nonmoving party because the evidence to support its case is so slight, summary judgment must be granted." Brown, 654 F.3d at 358 (internal citations omitted).

**ARGUMENT**

**A.     The Debtor Should be Denied His Discharge Pursuant to 11 U.S.C. §727(a)(3)**

3.      To state a *prima facie* claim under § 727(a)(3), the plaintiff must show: "(1) that the debtor failed to keep or preserve adequate records; and (2) that such failure makes it impossible to ascertain the debtor's financial condition and material business transactions." Pu v. Mitsopoulos (In re Mitsopoulos), 548 B.R. 620, 628–29 (Bankr. E.D.N.Y. 2016) (citations omitted). For § 727(a)(3) claims, "[t]he initial burden lies with the creditor to show that the debtor failed to keep and preserve any books or records from which the debtor's financial condition or business transactions might be ascertained." Berger & Assocs. Attys., P.C. v. Kran (In re Kran), 760 F.3d 206, 210 (2d Cir. 2014) (quoting In re Cacioli, 463 F.3d 229, 235 (2d. Cir. 2006)). Moreover, "the inquiry into the debtor's financial condition is limited to the span from a reasonable period of time before the bankruptcy filing through the pendency of the bankruptcy proceedings." Kran, 760 F.3d at 210. Intent to defraud is not an element of § 727(a)(3). See, e.g., Peterson v. Scott (In re Scott), 172 F.3d 959 (7th Cir. 1999); Aspire Fed. Credit Union v. Robinson (In re Robinson), 595 B.R. 148, 158 (Bankr. S.D.N.Y. 2019). However, pursuant to the Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Extend Time to Object to Discharge (the "Discharge Extension Order") [Main Case ECF Docket No. 149], for this Court to deny the Debtor

a discharge because of violation of §727(a)(3), "[Carbon] is going to have to satisfy the fraudulent intent requirement of § 727(d)(1)." Discharge Extension Order p. 27. "Fraudulent intent may be proved by showing either actual intent to deceive or a reckless indifference for the truth." In re Mitchell 2004 WL 1448041 (Bankr. N.D. Tex. 2006) (citing Sholdra v. Chillmark Fin. LLP (In re Sholdra), 249 F. 3d 380, 382 (5th Cir. 2001).

4. If the creditor meets its initial burden to prove the inadequacy of the debtor's records, Krohn v. Frommann (In re Frommann), 153 B.R. 113, 113 (Bankr. E.D.N.Y. 1993) (citing In re Martin, 554 F.2d 55, 58 (2d Cir. 1977) ), the burden shifts to the debtor to show that the failure was justified, In re Steinberg, 2017 WL 1184314, *8 (S.D.N.Y. 2017) (citing Cacioli, 463 F.3d at 235).

### I. *The Debtor Intentionally Deleted Files on His Laptop Post-Petition, and Thus Failed to Keep or Preserve Adequate Records; Further, Deletion Makes it Impossible to Ascertain Debtor's Financial Condition*

5. During the course of the AAA Arbitration, on March 22, 2019, the Arbitrator issued his "RULING ON CARBON PARTIES' RENEWED MOTION FOR SANCTIONS" ("AAA Sanctions Ruling"). A copy of the AAA Sanctions Ruling is attached as Exhibit C to the Klestadt Declaration.

6. The AAA Sanctions Ruling made the following findings of fact:

   a. Debtor was ordered to deliver his Laptop to Carbon's forensic expert no later than March 4, 2019, for the following purpose: "Mr. Bressler is directed to make the subject laptop available to Carbon's forensic consultant for the purpose of imaging the hard drive, and then conducting an examination to verify that no responsive documents reside there and to determine whether responsive documents have been deleted….Bressler previously refused to make his Laptop available for forensic imaging and represented on multiple occasions the Laptop was not used for work and contained no responsive documents or information. As stated above, Bressler was nevertheless ordered to turn the Laptop over for forensic examination on March 4, 2019.

b. Bressler was the only person who had possession of the Laptop on March 3, 2019.

c. On March 3, 2019 at 8:50 p.m., a trial version of the computer cleaning tool known as "CCleaner" was downloaded to Bressler's Laptop. One minute later, the full version of CCLeaner was run on the Laptop. As of the time the Laptop was turned over by Bressler on March 4, 2019, CCleaner was no longer present on the Laptop. This indicates CCLeaner was uninstalled or otherwise deleted prior to Bressler turning the Laptop over on March 4, 2019 for forensic examination. Forensic examination indicates CCleaner was not installed on the Laptop prior to March 3, 2019, and was not regularly run on the Laptop.

d. CCleaner is described as a "system optimization, privacy and cleaning tool" that "removes unused files from your system" and "also cleans traces of your online activities." CCLeaner's utility is described as follows: "When you delete a file, Windows removes the reference to that file, but doesn't delete the actual data that made up the file on your hard drive. Over time, this data will be overwritten as Windows writes new files to that area of the drive. This means that, given the right software, someone could reconstruct all, or parts of files that you've deleted. For privacy and security reasons, you can set CCleaner to wipe the free areas of your hard disk so that deleted files can never be recovered." See https://www.ccleaner.com.

e. As of 5:04 p.m. on March 3, 2019, a Windows profile titled "LeeBressler" existed on the Laptop. Such profile was subsequently deleted before the Laptop was turned over on March 4. Deletion of the profile resulted in the loss of all documents within that profile (My Documents, Downloads, Desktop and other folders). A new profile tilted "lee" was created at 5:14 p.m. on March 3, 2019.

f. Carbon's forensic expert ran search terms previously approved by the Arbitrator on the imaged version of the Laptop that was turned over by Bressler on March 4, 2019. Those searches indicate over 124,000 fragments of destroyed files include search terms (including, but not limited to, "Jeffries," "Lakani," "Carbon," "Nagel," and "Bradford"). "Carbon" was Bressler's employer at all relevant times. "Nagel" and "Bradford" were Bressler's former colleagues at Carbon. "Jeffries" was the Carbon Fund's prime broker, a key player in this and separate proceedings involving these parties. "Lakani" is the name of one of Bressler's main contacts at Jeffries.

g. Bressler's spoliation in the context of the Laptop was intentional and in direct violation of Discovery Orders and the District Court Injunctive Order.

6

AAA Sanctions Ruling, pgs. 4-5, Klestadt Declaration Exhibit C.[2]

7. The AAA Sanctions Ruling is expressly incorporated into the Judgment finding Debtor liable for fraud and breach of fiduciary duty. See Judgment, Klestadt Declaration Exhibit F, p. 8 Subparagraph 2 "Bressler's Counterclaims against Carbon."

8. As noted, the AAA Sanctions Ruling found that the Debtor had willfully and intentionally erased his laptop computer on March 3, 2019, prior to its production in the AAA Arbitration. The Arbitrator held in paragraph 12 that "[the Debtor's] spoliation in the context of the Laptop was intentional and in direct violation of Discovery Orders and the District Court Injunctive Order." The Debtor has never denied his improper conduct; the facts contained in the AAA Sanctions Ruling and in the AAA Award and Judgment are indisputable. The Debtor intentionally installed CCLeaner on his laptop, knowing that the program would permanently delete files on his laptop. He then ran that program to purposefully destroy everything on that laptop, including his financial records – thereby keeping them from Carbon and the Trustee. Finally, the destruction of those records in conjunction with the Debtor's complicated financial situation, and his failure to disclose assets as identified in the Statement of Facts and Klestadt Declaration, has made it impossible for the Trustee and Carbon to ascertain the Debtor's true financial condition.

## II. The Debtor Is Precluded From Relitigating the AAA Sanction Ruling and Oklahoma Judgment's Findings That He Intentionally Destroyed Evidence.

9. "Under the doctrine of issue preclusion, 'a prior judgment . . . foreclos[es] successive litigation of an issue of fact or law actually litigated and resolved in a valid court

---

[2] Carbon has appended the AAA Sanctions Ruling and Oklahoma Judgment as exhibits to the Klestadt Declaration for the Court's convenience. Carbon requests that the Court take judicial notice of the findings set forth in the AAA Sanctions Ruling and Oklahoma Judgment pursuant to Federal Rule of Evidence 201. It is not subject to reasonable dispute that the findings in these documents constitute the findings of the arbitrator and, upon confirmation and entry of the Final Award as an Oklahoma Judgment, of the courts of the State of Oklahoma.

determination essential to the prior judgment." *Herrera v. Wyoming*, 139 S. Ct. 1686, 1697 (2019) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001)).

10. Federal courts are required by the full faith and credit statute, 28 U.S.C. § 1738, to give preclusive effect to issues litigated and decided in state proceedings. *Joseph v. Athanasopoulos*, 648 F.3d 58, 61 (2d Cir. 2012). Section 1738 provides in pertinent part that "[t]he . . . judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." Thus, because the Judgment incorporating the AAA Sanctions Ruling was issued by the courts of the state of Oklahoma, this Court must apply Oklahoma preclusion law. *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466, (1982) (holding that Section 1738 "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.").

11. "To establish issue preclusion, a party must prove: 1) that the party against whom it is being asserted was either a party to or a privy of a party to the prior action; 2) that the issue subject to preclusion has actually been adjudicated in the prior case; 3) that the adjudicated issue was necessary and essential to the outcome of that prior case; and 4) the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue." *Glover Const. Co. v. State ex rel. Dep't of Transp.*, 2014 OK CIV APP 51, ¶ 20 (citing *Durham v. McDonald's Restaurants of Oklahoma, Inc.*, 2011 OK 45, ¶ 5).[3]

---

[3] The doctrine of collateral estoppel or issue preclusion applies to arbitration awards. *Wilson v. City of Tulsa*, 2004 OK CIV APP 44, ¶ 9 ("An arbitration award can be the basis for the application of issue preclusion if the other criteria are in place.") (citing *Cities Serv. Co. v. Gulf Oil Corp.*, 1999 OK 14, ¶¶ 16-17); *cf. CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) ("It is settled law that the doctrine of issue preclusion is applicable to issues resolved by an earlier arbitration.") (quoting *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991)). Of course, given that the AAA Sanctions Ruling was expressly incorporated into the Oklahoma Judgment, the Court need not rely on law holding that arbitral awards are entitled to preclusive effect.

12. The first element is easily satisfied, as there is no dispute that Debtor participated in the AAA Arbitration and Oklahoma litigation confirming the AAA award.

13. The second and fourth elements are also satisfied. The Debtor's intentional deletion of files or spoliation was actually litigated during the AAA Arbitration, and Debtor had ample fair opportunity to litigate the issue. Indeed, the AAA Sanctions Ruling expressly sets forth the extensive process afforded to Debtor before the AAA Sanctions Ruling was issued:

> In connection with Carbon's 3/16/19 Motion, the parties presented argument and evidence on March 18 and 19, 2019. Carbon's 3/16/19 Motion was accompanied by a voluminous spreadsheet that was provided to Bressler. On March 18, 2019, Carbon provided Bressler and the Arbitrator a Declaration by Carbon's forensic expert, Shawn Kerr (the "Kerr Declaration"). Bressler was expressly granted the opportunity to respond and actively participate through presentations made by his counsel and by Bressler himself. In addition, on March 18, 2019, Bressler requested that Carbon make arrangements to have a forensic copy of his laptop's hard drive transmitted by overnight delivery to a forensic consultant selected by Bressler in Oklahoma. Carbon complied with Bressler's request. On March 19, 2019, testimony was received from Mr. Kerr. Bressler's counsel and Mr. Bressler himself questioned Mr. Kerr concerning his Declaration and the findings reported therein. At Bressler's request, he was permitted to audio record Mr. Kerr's testimony so that it could be shared with Bressler's own forensic consultant (who was available to attend Mr. Kerr's testimony). Bressler was further afforded the opportunity to provide written feedback from his forensic expert concerning the findings contained in the Kerr Declaration and Carbon's 3/16/19 Motion. A deadline was established for the submission of Bressler's expert report. Notwithstanding the fact Bressler's expert's report was submitted after expiration of the established deadline, the Arbitrator nevertheless received and reviewed such belated report.

AAA Sanctions Ruling, p. 2.

14. Finally, there is no question that the third element is satisfied because the issues adjudicated in the AAA Sanctions Ruling were necessary and essential to the outcome of the dispute between Carbon and Debtor. Indeed, the AAA Sanctions Ruling resulted in the dismissal with prejudice of Debtor's counterclaims. Thus, Debtor's intentional destruction of files on his laptop was the key dispositive issue deciding his claims in the arbitration.

15. Because every element of issue preclusion is satisfied, the Debtor is collaterally estopped from relitigating the facts relating to his intentional destruction of his entire laptop hard drive.

16. Carbon respectfully submits that the above information shows that the Debtor intentionally destroyed financial records.

17. Furthermore, as identified in the searches of the Debtor's laptop performed by Shawn Kerr, see Exhibit E attached to the Klestadt Declaration, the above mentioned deleted financial records included information related to Debtor accounts with American Express, Charles Schwab, JP Morgan, Santander Bank and TD Ameritrade. Additionally, the Debtor deleted files related to his ownership interests in entities Rappahannock Development Finance Holdings, LLC and Harvest Employee Associates IV, LLC. Finally, some deleted files appear to have related to Raich Ende Malter, which, upon information and belief, was an accounting firm engaged by the Debtor. Carbon submits that the intentional destruction of this information and the information identified in the AAA Sanctions Order, when taken in conjunction with the Debtor's interests in a confusing multitude of trusts, including but not limited to those identified in his Schedules, has made it impossible for both Carbon and the Trustee to reconstruct the Debtor's financial condition and material business transactions.

**B.** **The Debtor Should be Denied his Discharge Pursuant to 11 U.SC. §727(a)(4)(A)**

18. Section 727(a)(4)(A) provides a discharge will not be granted if "the debtor knowingly and fraudulently, or in connection with the case… made a false oath or account." 11 U.S.C. §727(a)(4)(A). When objecting to a debtor's discharge pursuant to §727(a)(4)(A), the moving party must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent

intent; and (5) the statement related materially to the bankruptcy case." Carlucci & Legum v. Murray (In re Murray), 249 B.R. 223, 228 (E.D.N.Y. 2000).

19. A bankruptcy petition, schedules and related statements are declarations made under the penalty of perjury and "constitute a statement under oath for purposes of 727(a)(4)(A)." In re Bordonaro 543 B.R. 692, 701 (Bankr. E.D.N.Y. 2016) (citing Nof v. Gannon (In re Gannon), 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)). "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a) purposes. Id., see also (Adler v. Lisa Ng. and Charming Trading Company (In re Adler)), 395 B.R. 827, 841 (E.D.N.Y. 2008). Additionally, "one single false oath or account is sufficient to deny a debtor's discharge." In re Bordonaro 543 B.R. 692, at 701 (quoting TD Bank N.A. v. Nazzaro (In re Nazzaro), 2013 WL 145627, at 7 (Bankr. E.D.N.Y. 2013)). Further, "a debtor's act of amending his schedules can be used to establish that the statements in the original petition were false, but such amendment does not per se establish the debtor's knowledge or fraudulent intent." In re Bordonaro 543 B.R. 692, at 701 (quoting In re Moreo, 2008 WL 5110967, at 4 (Bankr. E.D.N.Y. 2008)).

20. In addition to the above, fraudulent intent must be shown by actual, not constructive fraud. "The party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions....it is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud." In re Dubrowsky, 244 B.R. 560, 571-572 (E.D.N.Y. 2000); see also In re Diorio, 407 F.2d 1330, 1331 (2d Cir.1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt....[R]eckless indifference to the truth ... is the equivalent of fraud."). "Because a debtor is unlikely to admit to having made a deliberate misstatement, an

11

objector may prove knowledge of falsity for purposes of Code § 727(a)(4)(A) by proving that the debtor acted with at least a reckless disregard for the truth." In re Scott, 233 B.R. 32, 44 (Bankr.N.D.N.Y.1998) (citing In re Chavin, 150 F.3d 726, 728 (7th Cir.1998)). "Where it reasonably appears that the oath is false, the burden falls upon the debtor to come forward with evidence to prove that it was not an intentional misrepresentation. If the debtor fails to provide such evidence or a credible explanation for his failure to do so, a court may infer fraudulent intent." In re Gollomp, 198 B.R. 433, 437 (S.D.N.Y.1996) (quoting In re Arcuri, 116 B.R. 873, 884 (Bankr.S.D.N.Y.1990)).

21. Lastly, a false oath or omission is material if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of his property." In re Bordonaro 543 B.R. 692, at 702; Agai v. Antoniou (In re Antoniou), 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014).

### I. *The Debtor Knowingly and Fraudulently Made a False Oath or Account by Failing to Disclose Certain Ownership Interests*

22. As identified in the Statement of Material Facts, the Debtor made false declarations and omissions that his Initial Schedules, SOFA and Petition were true and correct, when in fact, they were not. Additionally, the Debtor gave false and misleading accounts to the Chapter 7 Trustee at the Section 341 Meeting. The Debtor failed to disclose his ownership interests in (i) the Microsoft On-Hire Stock Award, (ii) the Santander Checking Account and (iii) 1 South Wacker Holdings, LLC, in his Initial Schedules, SOFA or Petition, nor did he disclose those ownership interests during the Section 341 Meeting. Further, the failure to disclose was done intentionally and fraudulently.

23. In his Answer, the Debtor denied that the omissions were intentional, and, he filed Amended Schedules disclosing the above listed ownership interests. However, this was only after

12

both the Trustee's Discharge Complaint and Plaintiffs' Extension Motion were filed and specifically identified the omissions. The Debtor's fraudulent intent is shown by clear and undisputed circumstantial evidence. The Debtor (i) failed to reveal the identity of Microsoft as his employer during questioning at the 341 Meeting, (ii) objected to Rule 2004 discovery on Microsoft, (iii) failed to disclose the existence of the Microsoft On-Hire Stock Award, (iv) failed to disclose his ownership interest in the Santander Checking Account, and (v) failed to disclose his ownership interest in 1 South Wacker Holdings, LLC. Further, the Debtor's credibility is negated based on his spoliation as described in the AAA Sanctions Ruling and the Final Award (which was confirmed by the District Court of Oklahoma County, State of Oklahoma), which found that the Debtor committed serious acts of fraud and breached fiduciary duties owed to Carbon and its investors and that his conduct was willful and without remorse. Based on the circumstances of this case, and the Debtor's behavior identified above, the Court can find his omissions were intentional.

24. Finally, all of the omissions by the Debtor are material as they directly relate to his estate, assets and business dealings.

25. Carbon respectfully submits that the above information shows that the Debtor intentionally made false oaths and omitted material information when he failed to disclose certain ownership interests to the Trustee and creditors.

C. **Debtor's Discharge Should Be Denied Pursuant to 11 U.S.C. §727(a)(2)(B)**

26. In order to prevail on their concealment claim under Section 727(a)(2)(B), the Plaintiffs must show that "(i) the property at issue belonged to the Debtor; (ii) he concealed it; (iii) he did so with the intent to hinder his creditors, delay them, or defraud them; and (iv) must show that the property that was concealed constituted property of the Debtor's estate and that the act of

13

concealment took place after the date of the filing of the petition. In re Levi, 581 B.R. 733 (S.D.N.Y. Bankr. 2017).

27. "Property of the estate," as that term is used in section 727(a)(2)(B), is defined in the Bankruptcy Code. With certain exceptions that are not applicable here, the bankruptcy estate broadly includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

### I. *Debtor Concealed His Ownership Interests in Certain Assets With the Intent to Hinder, Delay and Defraud his Creditors and the Trustee*

28. Once again, the Debtor failed to disclose his ownership interests in (i) the Microsoft On-Hire Stock Award, (ii) the Santander Checking Account and (iii) 1 South Wacker Holdings, LLC, in his Initial Schedules, SOFA or Petition, nor did he disclose those ownership interests during the Section 341 Meeting. Additionally, the concealment took place after the Petition Date as he failed to disclose the interests during the Section 341 Meeting or in his Initial Schedules. Further, Debtor's intent to conceal the above assets can once again be found through his history of concealing assets as identified above in the Statement of Material Facts and Klestadt Declaration, and his lack of credibility as shown in the AAA Sanctions Award, the Final Award and Judgment.

29. Carbon respectfully submits that the above information shows that the Debtor intentionally concealed his ownership interests in certain assets with the intent to hinder, delay and defraud his creditors and the Trustee.

### D. **Debtor's Discharge Should Be Denied Pursuant to 11 U.S.C. §727(a)(4)(D)**

30. Denial of a discharge under Section 727(a)(4)(D) requires that the Plaintiffs prove the following elements: (i) the debtor knowingly and fraudulently; (ii) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books,

documents, records and papers relating to the debtor's property or financial affairs; and (iii) in or in connection with the debtor's own case." 11 U.S.C. §727(a)(4)(D).

31. Courts have interpreted this provision as imposing an affirmative duty on debtors to cooperate with the trustee "by providing all requested documents to the trustee for his review, and failure to do so constitutes grounds for denial of discharge." In re Erdheim, 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996) (holding that the debtor failed to fulfill the duty to cooperate when the trustee was forced to seek production from third parties of documents the debtor had available to him). As noted above, this subsection requires a finding of intent. The circumstantial evidence supporting the requisite intent to act "knowingly and fraudulently" was found to exist in other cases when the debtor's conduct was evasive or persistently uncooperative, In re Young, 346 B.R. 597, 615 (Bankr. E.D.N.Y. 2006).

### I. *Debtor Knowingly and Fraudulently Withheld from the Trustee Information Relating to His Property and Financial Affairs*

32. As noted above, the Debtor failed to disclose his ownership interests in (i) the Microsoft On-Hire Stock Award, (ii) the Santander Checking Account and (iii) 1 South Wacker Holdings, LLC, in his Initial Schedules, SOFA or Petition, nor did he disclose those ownership interests during the Section 341 Meeting. Further, as noted in the AAA Sanctions Award, the Final Award and the Judgment, the Debtor was found to have committed fraud and acted willfully and intentionally when he destroyed files on his laptop, files and denied the Trustee access to information related to the Debtor's financial condition. Klestadt Declaration ¶13.

33. As such, Carbon respectfully submits that the above information shows that the Debtor intentionally withheld financial records and information from the Trustee.

## **CONCLUSION**

34. Based on upon the foregoing, Carbon respectfully requests that the Court enter summary judgment in its favor on the First, Second, Third and Fourth Causes of Action in the Complaint and deny the Debtor his discharge, and grant such other and further relief as is just.

Dated: New York, New York
     February 10, 2020

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
By: */s/ Tracy L. Klestadt*
    Tracy L. Klestadt
    Christopher Reilly
200 West 41 Street, 17th Floor
New York, NY 10036
(212) 972-3000

**BRAUNHAGEY & BORDEN LLP**

J. Noah Hagey
7 Times Square, 27th Floor
New York, NY 10036
       -and-
Ronald J. Fisher (*pro hac vice*)
351 California Street, 10th Floor
San Francisco, CA 94104

*Co-counsel to Carbon Investment Partners, LLC and Carbon Master Fund, L.P.*