**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>LEE ALEXANDER BRESSLER,<br><br>      Debtor.<br> | **NOT FOR PUBLICATION**<br><br>Chapter 7<br><br>Case No. 18-13098 (MG) |
| CARBON INVESTMENT PARTNERS, LLC<br>and CARBON MASTER FUND, L.P.,<br><br>      Plaintiffs,<br><br>vs.<br><br>LEE ALEXANDER BRESSLER,<br><br>      Defendant. | Adv. Proc. No. 19-01317 (MG) |

**MEMORANDUM OPINION GRANTING**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

*A P P E A R A N C E S:*

KLESTADT WINTERS JURELLER SOUTHARD & STEVENS LLP
*Attorneys for the Plaintiffs*
200 West 41st Street, 17th Floor
New York, NY 10036
By: Tracy L. Klestadt, Esq.
   Christopher J. Reilly, Esq.
     and
BRAUN HAGEY & BORDEN LLP
*Attorneys for the Plaintiffs*
7 Times Square, 27th Floor
New York, NY 10036
By: Jonas Noah Hagey, Esq.

SILVERMAN ACAMPORA LLP
*Attorneys for the Defendant*
100 Jericho Quadrangle, Suite 300
Jericho, NY 11753
By:    Ronald J. Friedman, Esq.
       David J. Mahoney, Esq.


**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

 Pending before the Court is the motion of Carbon Investment Partners, LLC and Carbon

Master Fund, L.P. (collectively, "Carbon" or the "Plaintiffs") for summary judgment with

respect to the First, Second, Third and Fourth Causes of Action in Carbon's complaint, dated

July 9, 2019 (the "Complaint," ECF Doc. #1), against Lee Alexander Bressler (the "Debtor" or

"Bressler"), to deny the Debtor's discharge pursuant to 11 U.S.C. §§ 727(a)(4)(A), 727(a)(2)(B),

727(a)(4)(d), 727(a)(3) and 727(d).  ("Carbon's Motion," ECF Doc. # 9.)  Carbon also submitted

a Statement of Undisputed Facts.  ("Carbon's Statement of Undisputed Facts," ECF Doc. # 10.)

Carbon's Motion is supported by a declaration of Carbon's attorney, Tracy Klestadt.  ("Klestadt

Decl.," ECF Doc. # 11.)  Debtor opposes Carbon's Motion ("Debtor's Opposition," ECF Doc. #

16) and submitted a counterstatement of disputed facts.  ("Debtor's Counterstatement of

Disputed Facts," ECF Doc. # 15.)  Mr. Bressler submitted a declaration in support of the

Debtor's Opposition.  ("Bressler Decl.," *id.*, Ex 1.)  Carbon submitted a reply brief.  ("Reply,"

ECF Doc. # 17.)

 For the reasons discussed below, the Motion is **GRANTED.**

# I.    BACKGROUND

The Court assumes familiarity with this Court's previous opinions in this case.[1]  Facts are repeated to the extent appropriate to explain this ruling.

On October 12, 2018 (the "Petition Date"), Bressler filed a voluntary chapter 7 petition. ("Petition," Case No. 18-13098 ("Main Case"), ECF Doc. # 1.)  Bressler is a former portfolio manager and Chief Investment Officer of an Oklahoma-based hedge fund, Carbon Master Fund I, LP (the "Fund").  ("Arbitration Award," Klestadt Decl., Ex. F, at 2.)

On March 30, 2018, Carbon filed an arbitration proceeding (the "AAA Arbitration") against Bressler, asserting that Bressler committed fraud and breached his fiduciary duty by executing speculative and unauthorized stock and option trades.  On December 7, 2018, this Court modified the automatic stay "to permit the AAA Arbitration to proceed until such time as a written award is rendered which decides its outcome . . . ."  ("Lift Stay Order," Main Case, ECF Doc. # 38.)

The hearing on the merits in the arbitration was conducted March 18 through March 22, 2019.  (Arbitration Award at 1.)  The Arbitrator issued the Arbitration Award on April 30, 2019. (*Id.* at 24.)  The Arbitration Award sustains Carbon's claims, finding by clear and convincing evidence that Bressler breached his fiduciary duties to Carbon and committed actionable fraud in his dealings with Carbon.  (*Id.* at 5.)  Those findings are supported by evidence that Bressler opened secret accounts to conceal unauthorized trades secured by Carbon's funds, and that the unauthorized trades exceeded Carbon's total assets under management by up to 3,000%.  (*Id.* at 12–16.)  When the trades proved unsuccessful, not only did they wipe out the Fund, but they

---

[1]     *In re Bressler*, 601 B.R. 318 (Bankr. S.D.N.Y. 2019); *In re Bressler*, No. 18-13098 (MG), 2019 WL 2382947 (Bankr. S.D.N.Y. June 4, 2019); *In re Bressler*, 600 B.R. 739 (Bankr. S.D.N.Y. 2019), *reconsideration denied*, No. 18-13098 (MG), 2019 WL 2382947 (Bankr. S.D.N.Y. June 4, 2019).

resulted in a multi-million-dollar deficiency. (*Id.* at 16.) The Arbitrator awarded Carbon

approximately $16.8 million, including approximately $12.7 million in compensatory damages

and $2.5 million in punitive damages. (*Id.* at 5.) On June 7, 2019, the Oklahoma County District

Court confirmed the Arbitration Award and granted judgment in conformity therewith. ("Order

and Judgment," Main Case, ECF Doc. # 132, Exs. A–B.)

### A.   Carbon's Motion and Statement of Undisputed Facts

Carbon argues that Debtor should be denied a discharge because Bressler purposely

failed to maintain and disclose financial information by intentionally destroying the contents on

his laptop computer. As found by the Arbitrator, and not disputed by Bressler, Bressler

intentionally deleted files on his laptop computer post-petition, and thus failed to keep or

preserve adequate records. The deletion of files prevented the chapter 7 trustee (the "Trustee")

and Plaintiffs from ascertaining the Debtor's financial condition. (Carbon's Motion at 5.)

On March 22, 2019, the Arbitrator issued his "Ruling On Carbon Parties' Renewed

Motion for Sanctions." ("AAA Sanctions Ruling," Klestadt Decl., Ex. C.)

The AAA Sanctions Ruling made the following findings of fact:

> a. Debtor was ordered to deliver his Laptop to Carbon's forensic expert no
> later than March 4, 2019, for the following purpose: "Mr. Bressler is
> directed to make the subject laptop available to Carbon's forensic
> consultant for the purpose of imaging the hard drive, and then
> conducting an examination to verify that no responsive documents
> reside there and to determine whether responsive documents have been
> deleted. . . . Bressler previously refused to make his Laptop available
> for forensic imaging and represented on multiple occasions the Laptop
> was not used for work and contained no responsive documents or
> information. As stated above, Bressler was nevertheless ordered to turn
> the Laptop over for forensic examination on March 4, 2019.

> b. Bressler was the only person who had possession of the Laptop on
> March 3, 2019.

> c. On March 3, 2019 at 8:50 p.m., a trial version of the computer cleaning
> tool known as "CCleaner" was downloaded to Bressler's Laptop. One

4

minute later, the full version of CCleaner was run on the Laptop. As of the time the Laptop was turned over by Bressler on March 4, 2019, CCleaner was no longer present on the Laptop. This indicates CCleaner was uninstalled or otherwise deleted prior to Bressler turning the Laptop over on March 4, 2019 for forensic examination. Forensic examination indicates CCleaner was not installed on the Laptop prior to March 3, 2019, and was not regularly run on the Laptop.

d.   CCleaner is described as a "system optimization, privacy and cleaning tool" that "removes unused files from your system" and "also cleans traces of your online activities." CCleaner's utility is described as follows: "When you delete a file, Windows removes the reference to that file, but doesn't delete the actual data that made up the file on your hard drive. Over time, this data will be overwritten as Windows writes new files to that area of the drive. This means that, given the right software, someone could reconstruct all, or parts of files that you've deleted. For privacy and security reasons, you can set CCleaner to wipe the free areas of your hard disk so that deleted files can never be recovered." *See* https://www.ccleaner.com.

e.   As of 5:04 p.m. on March 3, 2019, a Windows profile titled "LeeBressler" existed on the Laptop. Such profile was subsequently deleted before the Laptop was turned over on March 4. Deletion of the profile resulted in the loss of all documents within that profile (My Documents, Downloads, Desktop and other folders). A new profile titled "lee" was created at 5:14 p.m. on March 3, 2019.

f.   Carbon's forensic expert ran search terms previously approved by the Arbitrator on the imaged version of the Laptop that was turned over by Bressler on March 4, 2019. Those searches indicate over 124,000 fragments of destroyed files include search terms (including, but not limited to, "Jeffries," "Lakani," "Carbon," "Nagel," and "Bradford"). "Carbon" was Bressler's employer at all relevant times. "Nagel" and "Bradford" were Bressler's former colleagues at Carbon. "Jeffries" was the Carbon Fund's prime broker, a key player in this and separate proceedings involving these parties. "Lakani" is the name of one of Bressler's main contacts at Jeffries.

g.   Bressler's spoliation in the context of the Laptop was intentional and in direct violation of Discovery Orders and the District Court Injunctive Order.

(AAA Sanctions Ruling at 4–5.)[2]

---

[2]   Carbon requests that the Court take judicial notice of the findings set forth in the AAA Sanctions Ruling and Oklahoma Order and Judgment pursuant to Federal Rule of Evidence 201. Carbon argues that it is not subject to reasonable dispute that the findings in these documents constitute the findings of the arbitrator and, upon

The Plaintiffs argue that the AAA Sanctions Ruling is expressly incorporated into the Order and Judgment finding Debtor liable for fraud and breach of fiduciary duty.  (*See* Arbitration Award at 5.)  As noted, the AAA Sanctions Ruling found that Bressler willfully and intentionally erased his laptop computer on March 3, 2019, before its production in the AAA Arbitration as ordered by the Arbitrator.  Bressler has never denied his improper conduct.  The destruction of the records in conjunction with the Debtor's complicated financial situation, and his failure to disclose assets, has made it impossible for the Trustee and Carbon to ascertain the Debtor's true financial condition.  (Carbon's Motion ¶ 8.)  Further, Plaintiffs argue that the Debtor is precluded from relitigating the AAA Sanctions Ruling and the Order and Judgment findings that he intentionally destroyed evidence.  (*Id.* at 7–9.)

### B.    The Debtor's Opposition and Counterstatement of Disputed Facts

The Debtor contests several of Plaintiffs' statements of undisputed facts.  The Debtor responds to Plaintiffs' claim that the Debtor forensically destroyed files on his laptop computer, and intentionally deleted or forensically destroyed computer files.  (Debtor's Counterstatement of Disputed Facts ¶¶ 2–3 (citing Carbon's Statement of Undisputed Facts ¶¶ 8–9).)  The Debtor further disputes that he failed to disclose "an on-hire stock award, a bank account and ownership interests in a limited liability company," and that prior to the Petition Date, the Debtor had received an award of Microsoft common stock having a value of $50,000.  (*Id.* ¶ 4–5 (citing Carbon's Statement of Undisputed Facts ¶¶ 16, 19.)  Instead, the Debtor alleges that the on-hire stock award had no value when Microsoft hired the Debtor, when the Debtor filed his Petition, or at any point thereafter.  (*Id.*)  The Debtor further disputes that he intentionally failed to disclose an administrable interest in 1 South Wacker Holdings, LLC.  The Debtor alleges that he

---

confirmation and entry of the Final Award as an Oklahoma Judgment, of the courts of the State of Oklahoma. (Carbon's Motion ¶ 6 n.2.)  The Court agrees and takes judicial notice of the findings.

disclosed his interest in that entity to his prior bankruptcy counsel, who advised that the disclosure was unnecessary because the asset did not have any administrable value.  (*Id.* ¶ 8.)

The Debtor argues that Plaintiffs failed to make their *prima facie* case to deny the Debtor a discharge pursuant to section 727(a)(3) of the Bankruptcy Code because the Debtor has preserved information which is sufficient for the Court to ascertain his financial condition for the purpose of obtaining a discharge.  (Debtor's Opposition at 3.)  The Debtor claims that any files that appeared to be deleted or destroyed upon production in the AAA Arbitration have been preserved and maintained, and to the extent that the files are relevant, the Debtor is ready and willing to disclose files to the Trustee on demand.  (*Id.*)  The Debtor further alleges that the AAA Sanctions Ruling is insufficient to establish that there are no triable and material issues of fact here to warrant denying Debtor his discharge.  The Debtor also argues that Plaintiffs cannot meet their additional burden to prove that the Debtor had an actual intent to defraud creditors.  (*Id.*)

### C.    Plaintiffs' Reply

The Reply argues that the Debtor's Opposition does not contest that the Debtor erased his laptop computer destroying his financial records stored on that computer, including personal financial records, and thus demonstrates a violation of record-keeping obligations under section 727(a)(3) of the Bankruptcy Code.  (Reply ¶ 1.)  Plaintiffs reiterate that Carbon's Motion demonstrated that after a full litigation in the AAA Arbitration, Debtor intentionally used forensic data destruction software to wipe his laptop of all data immediately before he turned the laptop over to Carbon pursuant to a discovery order.  Further, the issue of spoliation was fully litigated before the Arbitrator.  Because the Order and Judgment could not have been issued in its ultimate form absent the Arbitrator's finding of spoliation, the issue was necessarily decided and the Debtor is collaterally estopped from re-litigating his spoliation by the doctrine of issue

preclusion.  (*Id.* ¶¶ 8–10.)  Plaintiffs further argue that whether Debtor produced a USB drive to

Carbon in the AAA Arbitration that contained a complete copy of his organizations' structure

and associated files is immaterial.  In their view, the issue in Carbon's Motion is the legal effect

of the Arbitrator's binding determination that Debtor destroyed the financial records stored on

his laptop—not whether or not Debtor produced records relevant to his employment at Carbon in

the AAA Arbitration.  (*Id.* ¶ 11.)

Plaintiffs further state that although section 727(a)(3) of the Bankruptcy Code does *not*

require intent, the AAA Sanctions Ruling did find that the "spoliation in the context of the

Laptop was intentional . . . ." (*Id.* ¶ 13 (citing AAA Sanctions Ruling at 5 ¶ 12).)  In addition,

Plaintiffs argue that Debtor's attempt to rely on the advice of his prior counsel in failing to

disclose a property interest is immaterial because his obligation to disclose is absolute.  (*Id.* ¶

17.)  Further, the Debtor does not dispute that he failed to disclose the existence of the Santander

checking account.  (*Id.* ¶ 18.)

Carbon also argues that the Debtor did not dispute several paragraphs of Carbon's

Statement of Undisputed Facts, including that Carbon did not learn before the initial deadline to

object to the Debtor's discharge because of Bressler's intentional erasing of his laptop computer

and the existence of these assets, thereby satisfying the timing requirement under section

727(d)(1) of the Bankruptcy Code.  *See In re Bressler*, 601 B.R. at 329–31.  Further, section

727(d)(1) of the Bankruptcy Code requires a showing of fraud, and the AAA Sanctions Ruling

specifically found intentional fraud.  Thus, Debtor is precluded from re-litigating the issue.

Further, this Court previously found with respect to the Santander checking account and

Microsoft on-hire award that "[t]here is sufficient evidence to conclude that Bressler fraudulently

concealed the [Microsoft On-Hire] signing bonus by not disclosing it on his SOAL or SOFA,

which is grounds for revocation of a discharge under 727(d)(1)." *In re Bressler*, 601 B.R. at 334.

With respect to the Santander checking account, this Court held that "[h]is denial may not be

credible. When considering the totality of the circumstances, there is a plausible claim that

Bressler intentionally concealed the account and transfer." *Id.* at 336.

## II.    LEGAL STANDARD

### A.    Summary Judgment

The standards for summary judgment were explained by the district court in *Thomas v.*

*River Greene Constr. Grp. LLC*, No. 17 CIV. 6954 (PAE), 2018 WL 6528493, at *3–4

(S.D.N.Y. Dec. 11, 2018):

> To prevail on a motion for summary judgment, the movant must "show[ ]
> that there is no genuine dispute as to any material fact and the movant is
> entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant
> bears the burden of demonstrating the absence of a question of material fact.
> In making this determination, the Court must view all facts "in the light
> most favorable" to the non-moving party. *Holcomb v. Iona Coll.*, 521 F.3d
> 130, 132 (2d Cir. 2008); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,
> 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
>
> If the movant meets its burden, "the nonmoving party must come forward
> with admissible evidence sufficient to raise a genuine issue of fact for trial
> in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536
> F.3d 140, 145 (2d Cir. 2008). "[A] party may not rely on mere speculation
> or conjecture as to the true nature of the facts to overcome a motion
> for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010)
> (internal quotation marks and citation omitted). Rather, the opposing party
> must establish a genuine issue of fact by "citing to particular parts of
> materials in the record." FED. R. CIV. P. 56(c)(1)(A); *see also Wright v.
> Goord*, 554 F.3d 255, 266 (2d Cir. 2009).
>
> "Only disputes over facts that might affect the outcome of the suit under the
> governing law" will preclude a grant of summary judgment. *Anderson v.
> Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202
> (1986). In determining whether there are genuine issues of material fact,
> the Court is "required to resolve all ambiguities and draw all permissible
> factual inferences in favor of the party against whom summary judgment is
> sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)
> (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)) (internal
> quotation marks omitted).

*Id.*  To survive a summary judgment motion, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record."  FED. R. CIV. P. 56(c)(1).

### B.    Bankruptcy Code Section 727(a)

Section 727(a) of the Bankruptcy Code provides that the court shall grant the debtor a discharge of all prepetition debts unless the chapter 7 trustee, a creditor or the United States Trustee objects to a discharge and establishes grounds for denying a discharge under the enumerated subsections of section 727(a) of the Bankruptcy Code.[3]  On the present Motion, Carbon argues that four of those subsections—sections 727(a)(2)(B), (a)(3), (a)(4)(A) and (a)(4)(D)—apply and provide a basis for denying Bressler a discharge of *any* prepetition claims, including Carbon's claim that exceeds $16 million.  All of those subsections are discussed below.

### 1.    Section 727(a)(3)

Section 727(a)(3) of the Bankruptcy Code provides that the debtor shall be denied a discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained."  11 U.S.C. § 727(a)(3).  To prevail under section 727(a)(3), a plaintiff must prove that the debtor: (1) failed to keep and maintain adequate books and records and that (2) such failure makes it impossible to discern the debtor's true financial condition and to identify material transactions.  *See Jacobowitz v. Cadle Co.* (*In re Jacobowitz*), 309 B.R. 429, 436 (S.D.N.Y. 2004).

---

[3]    The effect of denying a discharge under section 727 of the Bankruptcy Code is to deny a debtor a discharge of all prepetition claims, unlike denial of a discharge of specific claims under section 523.  A chapter 7 trustee or the United States Trustee seeks to deny a discharge of all claims under Bankruptcy Code section 727.  A creditor is often better off if a discharge is denied for its specific claim rather than for all claims.  Because Carbon initially missed the deadline to seek to deny a discharge under section 523 of the Bankruptcy Code, its only recourse, as explained in this Court's prior decisions in this case, was under section 727 of the Bankruptcy Code.  Since Bressler has only a few other creditors, as a practical matter, the result from Carbon's standpoint is largely the same.

The purpose of section 727(a)(3) is to provide creditors and the court with "complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *Nof v. Gannon* (*In re Gannon*), 173 B.R. 313, 321 (Bankr. S.D.N.Y. 1994) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir.1992)). As such, "the purpose of section 727(a)(3) is not record-keeping for its own sake," *In re Palermo*, 370 B.R. 599, 613 (Bankr. S.D.N.Y. 2007) (internal citation and quotation marks omitted), but rather "to trace the debtor's financial history, to ascertain the debtor's financial condition, and to reconstruct the debtor's business transactions." *In re Goldstein*, 123 B.R. 514, 522 (Bankr. E.D. Pa. 1991). While the adequacy of documentation depends on the circumstances, complete disclosure is required in every case. *See In re Underhill*, 82 F.2d 258, 259 (2d Cir. 1936).

As this Court has previously explained:

> Courts have considered several factors in determining whether the circumstances of a case warrant a denial of discharge under 727(a)(3), including:
>
> (1) the complexity and volume of the business;
> (2) the amount of the debtor's obligations;
> (3) whether the failure to keep records was the debtor's fault;
> (4) the debtor's business experience and sophistication;
> (5) the customary business practices for record keeping in the debtor's type of business;
> (6) the degree of accuracy disclosed by the debtor's existing books and records; and
> (7) the extent of any egregious conduct on the debtor's part.

*Aspire Fed. Credit Union v. Robinson* (*In re Robinson*), 595 B.R. 148, 158 (Bankr. S.D.N.Y. 2019) (citing *Krohn v. Frommann* (*In re Frommann*), 153 B.R. 113, 117 (Bankr. E.D.N.Y. 1993)).

Intent to defraud is not an element of section 727(a)(3). *See Gore v. Kressner* (*In re Kressner*), 206 B.R. 303, 315 (Bankr. S.D.N.Y. 1997) (citing *In re Potter*, 88 B.R. 843, 848 (Bankr. N.D. Ill. 1988)).

### 2.    Section 727(a)(4)(A)

Section 727(a)(4)(A) of the Bankruptcy Code provides that a debtor shall be denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account . . . ." 11 U.S.C. § 727(a)(4)(A). To deny a discharge under section 727(a)(4)(A), the moving party must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Carlucci & Legum v. Murray* (*In re Murray*), 249 B.R. 223, 228 (E.D.N.Y. 2000). "A bankruptcy petition, schedules and related statements are declarations made under the penalty of perjury and 'constitute a statement under oath for purposes of § 727(a)(4)(A).'" *Fido's Fences, Inc. v. Bordonaro* (*In re Bordonaro*), 543 B.R. 692, 701 (Bankr. E.D.N.Y. 2016) (quoting *In re Gannon*, 173 B.R. at 320). "Omissions as well as affirmative misstatements qualify as false statements for Section 727(a) purposes." *Id.* (quoting *Adler v. Ng* (*In re Adler*), 395 B.R. 827, 841 (E.D.N.Y. 2008)). Additionally, "one single false oath or account is sufficient to deny a debtor's discharge." *In re Bordonaro*, 543 B.R. at 701 (quoting *TD Bank N.A. v. Nazzaro* (*In re Nazzaro*), No. 810-74869-REG, 2013 WL 145627, at *7 (Bankr. E.D.N.Y. Jan. 13, 2013)). Further, "[a] debtor's act of amending his schedules can be used to establish that the statements in the original petition were false, but such amendment does not per se establish the debtor's knowledge or fraudulent intent." *Id.* (quoting *Rossi v. Moreo* (*In re Moreo*), No. 07-71258-DTE, 2008 WL 5110967, at *4 (Bankr. E.D.N.Y. Dec. 2, 2008)).

12

In addition to the above, "[f]raudulent intent must be shown by actual, not constructive fraud." *Dubrowsky v. Estate of Perlbinder* (*In re Dubrowsky*), 244 B.R. 560, 571 (E.D.N.Y. 2000). "The party objecting to the discharge must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions." *Id.* at 571–72. "[I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud." *Id.* at 572; *see also In re Diorio*, 407 F.2d 1330, 1331 (2d Cir. 1969) ("Successful administration of the Bankruptcy Act hangs heavily on the veracity of statements made by the Bankrupt. . . . [R]eckless indifference to the truth . . . is the equivalent of fraud."). "Because a debtor is unlikely to admit to having made a deliberate misstatement, an objector may prove knowledge of falsity for purposes of [section] 727(a)(4)(A) by proving that the debtor acted with at least a reckless disregard for the truth." *Town of Skaneateles v. Scott* (*In re Scott*), 233 B.R. 32, 44 (Bankr. N.D.N.Y. 1998) (citing *In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998)).

"[W]here it reasonably appears that the oath is false, the burden falls upon the debtor to come forward with evidence to prove that it was not an intentional misrepresentation. If the debtor fails to provide such evidence or a credible explanation for his failure to do so, a court may infer fraudulent intent." *Painewebber Inc. v. Gollomp* (*In re Gollomp*), 198 B.R. 433, 437 (S.D.N.Y. 1996) (quoting *MacLeod v. Arcuri* (*In re Arcuri*), 116 B.R. 873, 884 (Bankr. S.D.N.Y. 1990)). Lastly, a false oath or omission "is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Bordonaro*, 543 B.R. at 702 (quoting *Agai v. Antoniou* (*In re Antoniou*), 515 B.R. 9, 22 (Bankr. E.D.N.Y. 2014)).

### 3.      Section 727(a)(2)(B)

Section 727(a)(2)(B) of the Bankruptcy Code provides that a debtor should also be denied a discharge if the debtor, with the intent to hinder, delay or defraud a creditor or an officer of the estate, concealed property of the estate, after the date of the filing of the petition.  11 U.S.C. § 727(a)(2)(B).  To prevail on a concealment claim under section 727(a)(2)(B), the plaintiff "must show that (i) the property at issue belonged to [the debtor]; (ii) he concealed it; (iii) he did so with the intent to hinder his creditors, delay them, or defraud them; and . . . [(iv)] the property that was concealed constituted property of [the debtor's] estate and that the act of concealment took place after the date of the filing of the petition."  *Mazer-Marino v. Levi* (*In re Levi*), 581 B.R. 733, 744 (Bankr. S.D.N.Y. 2017) (citing *In re Boyer*, 328 F. App'x 711, 714–15 (2d Cir. 2009)).  "Property of the estate," as that term is used in section 727(a)(2)(B), is defined in the Bankruptcy Code.  With certain exceptions that are not applicable here, the bankruptcy estate broadly includes "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).

### 4.      Section 727(a)(4)(D)

Section 727(a)(4)(D) of the Bankruptcy Code requires that a debtor be denied a discharge if "the debtor knowingly and fraudulently, or in connection with the case— . . . (D) withheld from an officer of the estate . . . any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs."  11 U.S.C. § 727(a)(4)(D).  Section 727(a)(4)(D) requires a plaintiff to prove the following elements: (i) the debtor knowingly and fraudulently; (ii) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records and papers relating to the debtor's property or financial affairs; and (iii) in or in connection with the debtor's

14

own case. *See id.* Courts have interpreted this provision as imposing an affirmative duty on a

debtor to cooperate with the trustee "by providing all requested documents to the Trustee for his

review, and failure to do so constitutes grounds for denial of discharge." *Thaler v. Erdheim* (*In

re Erdheim*), 197 B.R. 23, 28 (Bankr. E.D.N.Y. 1996) (holding that the debtor failed to fulfill the

duty to cooperate when the trustee was forced to seek production from third parties of documents

the debtor had available to him).

### C.    Issue Preclusion

The principle of collateral estoppel, also known as issue preclusion, applies in a denial of

a discharge proceeding. *See Wharton v. Shiver (In re Shiver)*, 396 B.R. 110, 119–31 (Bankr.

S.D.N.Y. 2008) (applying collateral estoppel in a denial of discharge adversary proceeding).

"[T]he preclusive effect of a state court determination in a subsequent federal action is

determined by the rules of the state where the prior action occurred . . . ." *Lupe Dev. Partners,

LLC v. Deutsch* (*In re Deutsch*), 575 B.R. 50, 57 (Bankr. S.D.N.Y. 2017) (alteration in original);

*In re Soliman*, 515 B.R. at 185 (quoting *New York v. Sokol* (*In re Sokol*), 113 F.3d 303, 306 (2d

Cir. 1997)).

Because the Order and Judgment incorporating the AAA Sanctions Ruling was issued by

an Oklahoma state court, this Court must apply Oklahoma preclusion law. *Kremer v. Chem.

Constr. Corp.*, 456 U.S. 461, 466 (1982) ("Section 1738 requires federal courts to give the same

preclusive effect to state court judgments that those judgments would be given in the courts of

the State from which the judgments emerged."). Under Oklahoma law,

> Issue preclusion prevents relitigation of facts and issues actually litigated
> and necessarily determined in an earlier proceeding between the same
> parties or their privies. An issue is actually litigated if it is properly raised
> in the pleadings or otherwise, submitted for determination, and in fact
> determined . . . . An issue is necessarily determined if the judgment would
> not have been rendered but for the determination of that issue. Additionally,

>the party against whom issue preclusion is interposed must have had a "full
>and fair opportunity" to litigate the critical issue in the earlier case.

*In re Hyde*, 2011 OK 31, ¶ 12, 255 P.3d 411, 415 (Sup. Ct. Okla. 2011) (citations omitted).

## III.    ANALYSIS

### A.    The Debtor's Discharge is Denied Under Bankruptcy Code Section 727(a)(3)

The Court finds that the Debtor must be denied a discharge under section 727(a)(3) of the

Bankruptcy Code.  While intent to defraud is not an element of section 727(a)(3), *see, e.g.*,

*Peterson v. Scott* (*In re Scott*), 172 F.3d 959 (7th Cir. 1999); *Aspire Fed. Credit Union v.*

*Robinson* (*In re Robinson*), 595 B.R. 148, 158 (Bankr. S.D.N.Y. 2019), this Court previously

held that, in order for Carbon to deny a discharge under section 727(a)(3), "[Carbon] is going to

have to satisfy the fraudulent intent requirement of § 727(d)(1)."  *In re Bressler*, 601 B.R. at 337.

"Fraudulent intent may be proved by showing either actual intent to deceive or a reckless

indifference for the truth."  *Cadle Co. v. Mitchell* (*In re Mitchell*), 102 F. App'x 860, 862 (5th

Cir. 2004) (unpublished opinion) (citing *Sholdra v. Chilmark Fin. LLP* (*In re Sholdra*), 249 F. 3d

380, 382 (5th Cir. 2001)).  If the creditor meets its initial burden to prove the inadequacy of the

debtor's records, the burden shifts to the debtor to show that the failure was justified.  *D.A.N.*

*Joint Venture v. Cacioli* (*In re Cacioli*), 463 F.3d 229, 235 (2d Cir. 2006).

Here, as explained above, the AAA Sanctions Ruling found that Bressler willfully and

intentionally erased his laptop computer on March 3, 2019, prior to its production in the AAA

Arbitration.  The Arbitrator held that "[the Debtor's] spoliation in the context of the Laptop was

intentional and in direct violation of Discovery Orders and the District Court Injunctive Order."

(AAA Sanctions Ruling ¶ 12.)  Bressler has never denied his improper conduct.  The Court

concludes that the AAA Sanctions Ruling and the Oklahoma Award and Judgment must be given

preclusive effect in this denial of discharge adversary proceeding.  The Debtor intentionally

installed CCleaner on his laptop, knowing that the program would permanently delete files on his laptop. He ran that program on his laptop to purposefully destroy everything on the computer, including his financial records—thereby keeping them from Carbon and the Trustee. Finally, the destruction of those records in conjunction with the Debtor's complicated financial situation, and his failure to disclose assets as identified in Carbon's Statement of Undisputed Facts and the Klestadt Declaration, has made it impossible for the Trustee and Carbon to ascertain the Debtor's true financial condition. (*See* Carbon's Motion ¶¶ 8–9.)

The findings of the AAA Sanctions Ruling and the Arbitration Award satisfy the elements of section 727(a)(3) to deny Debtor's discharge. *See Jacobowitz*, 309 B.R. at 436 (finding that for an objecting creditor to prevail under section 727(a)(3), the creditor must prove that the debtor failed to keep and maintain adequate books and records and that such failure makes it impossible to discern the debtor's true financial condition and to identify material transactions).

Further, the doctrine of issue preclusion prevents the Debtor from relitigating the issue of his intentional destruction of financial records. To establish issue preclusion in Oklahoma, a party must prove: "(1) that the party against whom it is being asserted was either a party to or a privy of a party to the prior action; (2) that the issue subject to preclusion has actually been adjudicated in the prior case; (3) that the adjudicated issue was necessary and essential to the outcome of that prior case; and (4) the party against whom it is interposed had a full and fair opportunity to litigate the claim or critical issue." *Glover Constr. Co. v. State ex rel. Dep't of Transp.*, 2014 OK CIV APP 51, ¶ 20, 326 P.3d 547, 553 (Okla. Civ. App. 2014) (citing *Durham v. McDonald's Restaurants of Oklahoma, Inc.*, 2011 OK 45, ¶ 5, 256 P.3d 64, 67–68 (Okla. 2011)). Those requirements were established in this case.

Here, the AAA Arbitration and Oklahoma litigation demonstrate that Bressler

intentionally destroyed financial records.  The first element is satisfied because Bressler and

Carbon were both parties in the AAA Arbitration and Oklahoma litigation confirming the

Arbitration Award.  The second and fourth elements are also satisfied.  The Debtor's intentional

deletion of files or spoliation was actually litigated during the AAA Arbitration, and Debtor had

ample opportunity to litigate the issue.  Indeed, the AAA Sanctions Ruling expressly sets forth

the extensive process afforded to Debtor before the AAA Sanctions Ruling was issued:

> In connection with Carbon's 3/16/19 Motion, the parties presented
> argument and evidence on March 18 and 19, 2019.  Carbon's 3/16/19
> Motion was accompanied by a voluminous spreadsheet that was provided
> to Bressler.  On March 18, 2019, Carbon provided Bressler and the
> Arbitrator a Declaration by Carbon's forensic expert, Shawn Kerr (the
> "Kerr Declaration").  Bressler was expressly granted the opportunity to
> respond and actively participate through presentations made by his counsel
> and by Bressler himself.  In addition, on March 18, 2019, Bressler requested
> that Carbon make arrangements to have a forensic copy of his laptop's hard
> drive transmitted by overnight delivery to a forensic consultant selected by
> Bressler in Oklahoma.  Carbon complied with Bressler's request.  On March
> 19, 2019, testimony was received from Mr. Kerr.  Bressler's counsel and
> Mr. Bressler himself questioned Mr. Kerr concerning his Declaration and
> the findings reported therein.  At Bressler's request, he was permitted to
> audio record Mr. Kerr's testimony so that it could be shared with Bressler's
> own forensic consultant (who was available to attend Mr. Kerr's testimony).
> Bressler was further afforded the opportunity to provide written feedback
> from his forensic expert concerning the findings contained in the Kerr
> Declaration and Carbon's 3/16/19 Motion.  A deadline was established for
> the submission of Bressler's expert report.  Notwithstanding the fact
> Bressler's expert's report was submitted after expiration of the established
> deadline, the Arbitrator nevertheless received and reviewed such belated
> report.

(AAA Sanctions Ruling at 2.)

Finally, the third element is satisfied because the issues adjudicated in the AAA

Sanctions Ruling were necessary and essential to the outcome of the dispute between Carbon and

Bressler.  Indeed, the AAA Sanctions Ruling resulted in the dismissal with prejudice of

Bressler's counterclaims.  Thus, Bressler's intentional destruction of files on his laptop was a

dispositive issue deciding his claims in the arbitration.  Because every element of issue

preclusion is satisfied, the Debtor is collaterally estopped from relitigating the facts relating to

his intentional destruction of his entire laptop hard drive.  (*See* Carbon's Motion ¶¶ 13–15.)

Furthermore, as identified in the searches of the Debtor's laptop performed by Shawn

Kerr (Klestadt Decl., Ex. E), the deleted financial records included information related to

Bressler's accounts with American Express, Charles Schwab, JP Morgan, Santander Bank and

TD Ameritrade.  Additionally, the deleted files related to Bressler's ownership interests in

Rappahannock Development Finance Holdings, LLC and Harvest Employee Associates IV,

LLC.  Finally, some deleted files appear to relate to Raich Ende Malter, an accounting firm

engaged by Bressler.  The Court concludes that clear and convincing evidence established that

Bressler intentionally destroyed the files and information identified in the AAA Sanctions

Ruling.  Bressler also failed to disclose his interests in a multitude of trusts, including but not

limited to those identified in his Schedules.  The result of Bressler's spoliation of evidence has

made it impossible for Carbon and the Trustee to reconstruct the Debtor's financial condition and

material business transactions.  (*See* Carbon's Motion ¶ 17.)

The Court rejects Debtor's argument that he is not precluded from relitigating issues

regarding his destruction of evidence that helped defraud his creditors.  The Debtor alleges that

the Order and Judgment was based on Plaintiffs' claims against Bressler for fraud and breach of

his fiduciary duty; but, he argues, they did not determine whether Bressler's destruction of

evidence was with the intent to defraud his creditors.  Debtor argues that he produced a USB

memory stick that contained a complete copy of his organization's structure and all associated

files which were kept during his employment with Plaintiffs.  Therefore, Debtor maintains that

material issues of fact exist regarding whether the Debtor actually destroyed or deleted any computer files.  (*Id*. at 4.)

The Court rejects Debtor's arguments.  Preclusion clearly applies here.  The issue of spoliation was fully litigated before the Arbitrator.  Because the Order and Judgment could not have been issued absent the Arbitrator's finding of spoliation, the issue was necessarily decided and the Debtor is collaterally estopped from relitigating spoliation by the doctrine of issue preclusion.  (*See* Reply ¶¶ 8–10.)

## B.    The Debtor's Discharge is Also Denied Under Bankruptcy Code Section 727(a)(4)(A)

The Court finds that the Debtor should also be denied a discharge under Bankruptcy Code section 727(a)(4)(A) which provides a discharge will not be granted if "the debtor knowingly and fraudulently, in or in connection with the case—made a false oath or account . . . ."  11 U.S.C. § 727(a)(4)(A).  "A bankruptcy petition, schedules and related statements are declarations made under the penalty of perjury and constitute a statement under oath for purposes of § 727(a)(4)(A)."  *Fido's Fences, Inc.*, 543 B.R. at 701 (internal citation and quotation marks omitted).  Further, "[o]missions as well as affirmative misstatements qualify as false statements for Section 727(a) purposes."  *Id.*

The Court finds that the Debtor made false declarations that his Initial Schedules, SOFA and Petition were true and correct, when, in fact, they were not.  Additionally, the Debtor gave false and misleading accounts to the Trustee at the Section 341 Meeting.  In Debtor's Initial Schedules, SOFA or Petition, and at the 341 Meeting, the Debtor failed to disclose his ownership interests in (i) the Microsoft on-hire stock award, (ii) the Santander checking account, and (iii) 1 South Wacker Holdings, LLC,.  (*See* Carbon's Motion ¶¶ 22–23.)  Further, the Debtor failed to

reveal the identity of Microsoft as his employer during questioning at the Section 341 Meeting and objected to Rule 2004 discovery of Microsoft.  (*See id.* ¶ 23.)

The Debtor claims that there are genuine issues of material fact whether the Debtor acted with intent to defraud.  (Debtor's Opposition at 7.)  The Debtor claims he acted in good faith without intent to defraud to the extent he failed to make any required disclosure.  (*Id.*)  For example, Debtor claims that the Santander account was never used by him as a checking account and that any non-disclosure of his interest in 1 South Wacker Holdings, LLC was inadvertent, as he believed it was included with the disclosed interest in Rappahannock Development Finance, given that the investments were made by the same firm.  (*Id.* at 8–9.)  The Court rejects the Debtor's arguments.  Bressler's conduct throughout this bankruptcy case and in the AAA Arbitration displayed a consistent pattern of obfuscation and misrepresentation.

The Court finds and concludes that clear and convincing evidence establishes that Bressler's misrepresentations and omissions were intentional.  Therefore, the Debtor must be denied a discharge under section 727(a)(4)(A).

### C.    Debtor's Discharge is also Denied Under Bankruptcy Code Sections 727(a)(2)(B) and 727(a)(4)(D)

The Debtor's discharge should also be denied under sections 727(a)(2)(B) and 727(a)(4)(D) of the Bankruptcy Code.  As already indicated, to prevail on their concealment claim under section 727(a)(2)(B), the Plaintiffs "must show that (i) the property at issue belonged to [the Debtor]; (ii) he concealed it; (iii) he did so with the intent to hinder his creditors, delay them, or defraud them; and . . . [(iv)] the property that was concealed constituted property of [the Debtor's] estate and that the act of concealment took place after the date of the filing of the petition."  *Mazer-Marino v. Levi* (*In re Levi*), 581 B.R. at 744.

The evidence clearly establishes that the Debtor failed to disclose his ownership interests, as described above.  The Debtor's concealment took place after the Petition Date; he did not disclose several ownership interests during the Section 341 Meeting or in his Initial Schedules. The Court has already detailed the Debtor's concealment of assets.  The Court finds that the Debtor intentionally concealed his ownership interests in certain assets with the intent to delay and defraud his creditors and the Trustee.  Therefore, the Debtor's discharge must also be denied under section 727(a)(2)(B) of the Bankruptcy Code.

The Debtor must also be denied a discharge under section 727(a)(4)(D) of the Bankruptcy Code .  The evidence clearly establishes that (i) the debtor knowingly and fraudulently; (ii) withheld from the Trustee recorded information, including books, documents, records and papers relating to the debtor's property or financial affairs; and (iii) in or in connection with the debtor's own case.  *See* 11 U.S.C. § 727(a)(4)(D).  The Debtor had an affirmative duty to cooperate with the Trustee "by providing all requested documents to the Trustee for his review, and failure to do so constitutes grounds for denial of discharge."  *In re Erdheim*, 197 B.R. at 28.

As explained in the AAA Sanctions Ruling and the Order and Judgment, the Debtor committed fraud and acted willfully and intentionally when he destroyed files on his laptop, and denied the Trustee access to information related to the Debtor's financial condition.  (*See* Klestadt Decl. ¶ 13.)  The Court therefore finds that the Debtor intentionally withheld financial records and information from the Trustee.  The Court finds unpersuasive Debtor's argument that any failures to make complete disclosures were made without knowledge of their necessity and without fraudulent intent.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Carbon's Motion for summary judgment is **GRANTED**.  The

Plaintiffs are directed to settle a judgment consistent with this Opinion.

Dated:  New York, NY
            April 29, 2020


                        _____/s/ *Martin Glenn*_____
                            MARTIN GLENN
                        United States Bankruptcy Judge